## IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

FERNANDITO RIVERA           )
                                     )
           Plaintiff,           )
                                       )
           v.                      )         CPU4-14-003168
                                       )
                                       )
STATE FARM FIRE AND         )
CASUALTY COMPANY, a foreign   )
corporation,                         )
                                       )
           Defendant.        )

Submitted: September 16, 2015
Decided: October 20, 2015

Eileen M. McGivney, Esquire
Weik, Nitsche, Dougherty & Galbraith
305 N. Union Street, Second Floor
P.O. Box 2324
Wilmington, DE 19899
*Attorney for Plaintiff*

Patrick G. Rock, Esquire
Heckler & Frabizzio
800 Delaware Avenue, Suite 200
P.O. Box 128
Wilmington, DE 19899
*Attorney for Defendant*

## DECISION AFTER TRIAL

The instant matter is a breach of contract action for failure to pay personal injury protection ("PIP") benefits. On September 1, 2015, the Court held trial, and requested that the parties submit written closing summations. This is the Court's Memorandum Opinion and Order after consideration of the pleadings, the oral and documentary evidence submitted at trial, the arguments of the parties, and the applicable law. For the following reasons, the Court enters judgment in favor of Defendant.

### I. Procedural Background

On October 29, 2014, Fernandito Rivera ("Plaintiff") filed a Complaint against State Farm Fire and Casualty Company ("State Farm") alleging that State Farm breached the parties'

insurance agreement by failing to pay for Plaintiff's medical expenses after he was involved in a motor vehicle accident. As a result of State Farm's breach, Plaintiff sought damages in the amount of $15,721.00 plus interest and costs.

State Farm filed an Answer on January 19, 2015, denying Plaintiff's allegations in the Complaint and asserting multiple affirmative defenses. Specifically, State Farm averred, *inter alia*, that Plaintiff's injuries were pre-existing and were not a result of the accident, and that Plaintiff is unable to recover an amount greater than the $15,000.00 policy PIP limit.

On September 1, 2015, the Court held trial. The Court heard testimony from Plaintiff and received evidence from both parties.[1] At the conclusion of trial, the Court ordered the parties to submit their closing arguments in the form of a written letter. Accordingly, on September 2, 2015, the Court issues a briefing schedule. The parties have submitted their written arguments and the following is the Court's decision on the merits of those arguments.

## II. The Facts

Plaintiff was the only witness to provide live testimony at trial. In addition to Plaintiff's testimony, both parties proffered medical expert reports, as well as multiple medical records for the Court to consider.[2] After carefully reviewing the documentary evidence and assessing Plaintiff's live testimony, the Court finds the facts as follows:

Plaintiff testified that he was involved in a motor vehicle accident on March 6, 2013 after another motorist struck the left side of his vehicle, and that, as a result of the accident, he

---

[1] Specifically, the Court received into evidence Plaintiff's Exhibit 1, which was a binder of documents that included expert medical reports, medical records, and outstanding medical bills. The Court also received into evidence State Farm's Exhibit 1, which was a binder of documents that included an expert medical report and medical records, as well as State Farm's Exhibits 2, 3, 5, and 7.

[2] Plaintiff proffered medical expert reports from Dr. James McGlynn and Dr. James Downing, both of whom examined and treated Plaintiff throughout the course of 2013. State Farm proffered a medical expert report from Dr. John B. Townsend, who evaluated Plaintiff's patient history, including the treatment provided by Drs. McGlynn and Downing.

2

experienced pain in his right shoulder, and the left side of his body, including his left hip, and lower left back.

On April 13, 2013, Plaintiff sought treatment for the first time, and went to the St. Francis Hospital Emergency Room, complaining of moderate pain in his lower back.[3] According to the Emergency Provider Record for this visit, Plaintiff had indicated to the medical provider that he had a history of chronic back pain, and that the pain that he was experiencing at that time was similar to prior back pains.[4] However, the Emergency Nursing Record for this date also indicates that Plaintiff was not recently injured, and that he did not have any previous back injury.[5] Ultimately, Plaintiff received an injection of ketorolac tromethamine (Toradol) and a prescription for an anti-inflammatory agent, both for pain control, and was referred to Dr. Khuram R. Ghumman, who works in the St. Francis Family Practice.

On April 24, 2013, Plaintiff saw Dr. James McGlynn in the St. Francis Office of Premier Orthopaedic & Sports Medicine, Orthopaedic Associates Division, complaining of moderate to severe left hip pain that was occurring intermittently and was fluctuating.[6] Plaintiff described the pain to Dr. McGlynn as aching, piercing, and throbbing, and, for the first time, explained that the onset of the pain was the March 6, 2013 motor vehicle accident. Dr. McGlynn's assessment indicated that Plaintiff suffered a lower back strain as a result of the March 6, 2013 car accident.

---

[3] Notably, the medical records for this visit indicate that Plaintiff was complaining of lower back pain, in general, without any specific reference to either side of his back. In fact, on all diagrams of the human body (which were used to identify the location of pain), the medical provider circled the entire lower back, as opposed to a specific side.

[4] Deft. Exh. 3.

[5] Specifically, under "Past Medical HX," the medical provider circled "negative," as opposed to circling "previous back injury" or other possible medical surgeries or symptoms.

[6] In addition to the left hip pain, Plaintiff also complained of right shoulder pain that he had been experiencing for the past year. According to Dr. McGlynn's notes, the right shoulder pain was aggravated by lifting and movement, and was not caused by any particular injury. Plaintiff had been under Dr. McGlynn's care for his right shoulder pain, and was last seen by Dr. McGlynn on October 10, 2012.

Ultimately, Dr. McGlynn prescribed the Plaintiff Motrin, suggested that he continue taking his other pain relievers, recommended physical therapy, and instructed Plaintiff to follow up with him if the pain was not improving or if it was worsening.

Plaintiff then followed up with Dr. Ghumman on May 8, 2013. At that visit, Plaintiff described his pain and indicated that initially, after the March 6th accident, he felt "okay" but explained that after a few days, his pain worsened. Ultimately, Dr. Ghumman referred Plaintiff to physical therapy, prescribed Tylenol, and instructed Plaintiff to follow up with him in one moth or as needed.[7]

Plaintiff underwent physical therapy treatment from May 8, 2013 until July 5, 2013.[8] Although his lower back active range of motion had improved, ultimately, Plaintiff's pain level had not changed.

On July 10, 2013, Plaintiff returned to Dr. McGlynn's office for further evaluation. Plaintiff complained of moderate to severe bilateral hip pain that he claimed was constant and worsening over time. In his assessment, Dr. McGlynn indicated that the only significant change in Plaintiff's physical exam was that his sacroiliac (SI) joint was tender on the left side. As a result of that tenderness, Dr. McGlynn administered a corticosteroid injection into Plaintiff's left SI joint, and recommended that Plaintiff continue with physical therapy, and obtain an MRI of his lower back.

Plaintiff returned to Dr. McGlynn's office for the third and final time on August 14, 2013, complaining of throbbing bilateral hip pain that radiated to his legs, as well as sharp pain in his lower back. At the time of the visit, Plaintiff explained that the left hip SI joint injection that Dr. McGlynn administered on July 10, 2013 gave him some transient relief, but maintained

---

[7] Plaintiff submitted an invoice for Dr. Ghumman's exmaination, which cost $226.00, to State Farm, however, State Farm denied Plaintiff coverage for this visit.
[8] During this time, Plaintiff had seventeen appointments with his physical therapist.

that the pain returned within a couple of days. Dr. McGlynn reviewed the MRI of Plaintiff's lower back, which showed some minor degenerative changes.[9] Ultimately, Dr. McGlynn referred Plaintiff to Dr. James Downing for pain management.

On September 23, 2014, Plaintiff saw Dr. Downing at Interventional Spine Pain Consultants, P.A., seeking pain relief for his lower left back. After examining Plaintiff, Dr. Downing attributed his back pain to the March 6th accident "superimposed upon some degenerative changes from years of hard work."[10] Dr. Downing renewed Plaintiff's prescription for Tylenol, and recommended that Plaintiff proceed with left-sided lumbar injections for pain relief. Dr. Downing eventually performed the lumbar injections on October 8, 2013 and October 22, 2013. Plaintiff followed up with Dr. Downing almost two months later, on December 16, 2013, explaining that he was experiencing almost full resolution of his lower back pain following his last injection, and described his pain as very mild discomfort. On February 12, 2014, Plaintiff followed up with Dr. Downing once more, and again complained of only very minimal discomfort in his lower back.

During State Farm's cross-examination of Plaintiff, State Farm inquired about Plaintiff's medical history, namely, his previous complaints of lower back pain and shoulder discomfort after being injured in a motor vehicle accident on April 17, 2009. As a result of the April 2009 accident, Plaintiff sustained an injury to his entire lower back, and subsequently experienced pain in his lower back that radiated down to his left thigh.[11] Plaintiff followed up with Dr.

---

[9] Dr. Anh Dam, a neuroradiologist from Diagnostic Imaging Associates, had examined Plaintiff on July 17, 2013, after taking an MRI.

[10] Pl. Exh. 1 at Tab 10.

[11] On April 18, 2009, Plaintiff sought medical care at the St. Francis Hospital Emergency Room. In both the Emergency Nursing Record and the Emergency Provider Record, the medical provider indicated that Plaintiff complained of pain in his entire lower back. Notably, on the diagram of the human body (which was used to identify the location of pain), the medical provider circled the entire lower back, as opposed to a specific side. *See* Deft. Exh. 1 at Tab 3.

5

Domingo C. Singson following the April 2009 accident, and complained of lower back pain, and a shooting pain in his right leg. On May 26, 2009, Plaintiff had an MRI taken of his lower back, which revealed mild midline disc bulging on the left side of his lower back.[12] Throughout the course of 2009, Plaintiff underwent physical therapy and chiropractic treatment, and received lumbar injections. However, Plaintiff maintained that such treatment only alleviated his pain temporarily, and complained of pain in his lower right back. On January 6, 2010, after receiving lumbar injections, Plaintiff followed up with Dr, Bruce Rudin at First State Orthopaedics. Dr. Rudin spoke with Plaintiff about completing a facet joint nerve rhizotomy (which is an injection that would disable the nerve that goes to the joint in the spine) in order to completely alleviate his back pain, however, Plaintiff indicated that he wanted to avoid this procedure if possible.[13] Dr. Rudin noted that, due to Plaintiff's injury from the April 2009 accident, Plaintiff developed "symptomatic facet disease."[14] Plaintiff continued to receive treatment for his back pain throughout 2010 and 2011, however, he still complained of experiencing chronic back pain.

At the conclusion of trial, Plaintiff indicated that he was no longer seeking damages in the amount of $15,721.00, as requested in the Complaint, but rather, he was seeking $9,548.80, which represents the remaining amount of PIP benefits available to him under his policy.

### III. Parties' Contentions

Plaintiff contends that State Farm breached the parties' insurance agreement by failing to pay for Plaintiff's medical expenses after the March 2013 accident. In support of his contention,

---

[12] Specifically, Dr. Singson's assessment indicated that the MRI revealed "mild midline broad based disc bulging L4-L5 and to a lesser degree at L3-L4 and L5-S1" as well as "[m]ild sic bulging toward left neuroforamen at L2-L3."

[13] Although neither party nor medical expert explained this procedure, the Court takes judicial notice of this procedure and what it entails.

[14] In 2011, Dr. Stephen Beneck, a medical provider from Delaware Back Pain & Sports Rehabilitation Center who treated Plaintiff, also concluded that Plaintiff's chronic lower back pain was likely due to symptomatic lumbar degenerative disc disease. *See* Deft. Exh. 1 at Tab 11.

6

Plaintiff relies on expert medical reports from Dr. McGlynn and Dr. Downing. In Dr. Downing's report, he concluded that Plaintiff developed persistent left-sided low back pain as a result of the March 2013 accident. Dr. Downing opined, with a reasonable degree of medical probability, that the care that he provided Plaintiff was reasonable, necessary, and causally related to the March 2013 accident, noting that, as of February 2014, which was approximately one year after the March 2013 accident, Plaintiff had shown significant improvement and had only mild persistent symptoms. In Dr. McGlynn's report, he also concluded that his lower back complaints and treatment sought for those complaints were related to the March 2013 accident. Dr. McGlynn noted, however, that Plaintiff had an extensive history of complex treatment for his lower back pain. Dr. McGlynn further noted that he "had the opportunity to review these records [pertaining to his lower back pain history] and as a result, the motor vehicle accident of 03/06/2013 and its injuries could be considered nothing more than an aggravation of his preexisting injury."[15] In his concluding paragraph, Dr. McGlynn stated that the treatment provided to Plaintiff by Dr. Downing enabled Plaintiff to be in a better condition now than he was prior to the March 2012 accident.

State Farm contends that it is not in breach of contract, claiming that it properly denied Plaintiff's claim for medical expenses and arguing that that Plaintiff's injuries were pre-existing and were not a result of the March 6, 2013 accident. In support of this contention, State Farm proffered an expert medical report from Dr. John B. Townsend, III. After reviewing Plaintiff's medical history, Dr. Townsend concluded that Plaintiff's complaints of pain in his left hip are related to the March 2013 accident, and could be treated with a a nonsteroidal anti-inflammatory agent if he has ongoing hip complaints. On the other hand, Dr. Townsend also believed that Plaintiff's pain in his shoulders, lower back, and right leg were related to pre-existing injuries

---

[15] Pl. Exh. 1 at Tab 4.

and not to the March 2013 accident. Dr. Townsend noted that Plaintiff had a long history of pre-existing low back complaints, and indicated that in his opinion and with a reasonable degree of medical probability, the lumbar spine injections administered by Dr. Downing was unrelated to the March 2013 accident.

## IV. The Law

Section 2118(a)(2) of Title 21 of the Delaware Code requires insurance carriers to compensate its insured for "reasonable and necessary" medical expenses that relate to a motor vehicle accident for which the insured's PIP policy covers.[16] "The statutory standard is reasonable and necessary, which includes reasonable medical probability."[17] In order to satisfy this statutory standard, a plaintiff must present medical expert testimony that establishes "a causal link between the accident and the insured's injuries."[18] Thus, a plaintiff seeking reimbursement from an insurance carrier under the PIP statute "bears the burden of proof to establish by a preponderance of the evidence that the medical services received were necessary and that the bills or charges for such services were reasonable."[19]

In determining whether the plaintiff has met this burden, the Court, which serves as the trier of fact in a non-jury trial, has the sole responsibility in determining the credibility of

---

[16] *State Farm Mut. Auto. Ins. Co. v. State Dep't of Natural Res. & Envtl. Control*, 2011 WL 2178676, at *2 (Del. Super. May 31, 2011).

[17] *Id.*(quoting *Dennis v. State Farm Mut. Auto. Ins. Co.*, 2008 WL 4409436, at *2 (Del. Super. Feb. 13, 2008)).

[18] *Id.* (citing *Rayfield v. Power*, 840 A.2d 642 (Del. 2003) (TABLE)).

[19] *Mangene v. State Farm Ins.*, 2015 WL 4603052, at *3 (Del. Com. Pl. May 28, 2015) (quoting *Watson v. Metropolitan Property and Cas. Ins. Co.*, 2003 WL 22290906, at *5 (Del. Super. Ct. Oct. 2, 2003 (citing 17 Lee R. Russ & Thomas F. Segalla, Couch On Insurance § 254:59 (3d ed. 2001)) (internal brackets omitted).

8

witnesses.[20] When evidence is in conflict, the Court must resolve those conflicts "if reasonably possible[,] so as to make one harmonious story."[21]

## V. Opinion and Order

The Court has carefully examined the medical records, expert reports, and other evidence proffered by both parties, and finds that Plaintiff's complaints of his lower back injuries and pain were aggravated by a pre-existing condition from the April 2009 accident.[22] Although Plaintiff mainly experienced pain in his right lower back and his right leg after the April 2009 accident, medical records indicate that, as a result of that accident, he developed symptomatic facet disease in his spine, which caused him to continually have lower back pain. In fact, the results of Plaintiff's MRI, taken on May 26, 2009, revealed mild midline disc bulging on the left side of his lower back. The Court also notes that the lumbar injections that Plaintiff received in 2013 were administered in the same facet joints of the spine as the injections that were administered in 2009. This, coupled with the fact that Dr. McGlynn, Plaintiff's own medical expert, indicated that the injuries "could be considered nothing more than an aggravation of his pre-existing injury" leads the Court to believe that Plaintiff's injuries were in fact pre-existing, and therefore, the treatment sought in connection with these injuries was not necessary and casually related to the March 2013 accident.

The Court also finds that Plaintiff, as the only fact witness to provide live testimony, was less than compelling. Plaintiff was unable to recall what medications he took or when he received medical treatment, and often times, contradicted himself. Plaintiff was also unable to

---

[20] *Nat'l Grange Mut. Ins. Co. v. Nelson F. Davis, Jr. et. al.*, 2000 WL 33275030, at *4 (Del. Com. Pl. Feb. 9, 2000).

[21] *Id.*

[22] Although Dr. Downing, State Farm's medical expert, indicated that Plaintiff's hip injuries were related to the March 2013 accident, at trial, Plaintiff indicated that he had only sought treatment for his lower back, and without any more evidence regarding Plaintiff's hip pain, the Court is unable to award Plaintiff any damages for this injury.

9

explain why he waited five weeks after the March 2013 accident before seeking medical treatment and what caused him to seek such treatment. Additionally, Plaintiff could not provide details of the April 2009 accident, the injuries he sustained and the treatment he received as a result of the accident to the Court's satisfaction.[23]

Ultimately, the Court finds that Plaintiff has failed to meet his burden in proving, by a preponderance of the evidence, that the medical services received were necessary and that the bills or charges for such services were reasonable.

## VI. Conclusion

For the foregoing reasons, the Court hereby enters judgment against Plaintiff Fernandito Rivera and in favor of State Farm Fire and Casualty Company.

**IT IS SO ORDERED** this 21st day of October, 2015.

John K. Welch,
Judge

---

[23] The Court also finds the timing of Plaintiff initiating this lawsuit to be suspicious given that he settled his lawsuit for the April 2009 accident in April 2013, and subsequently underwent treatment with Dr. McGlynn.

10